Good morning. May it please the court. My name is John Whitefleet. I represent Corporal Whitman in this appeal regarding qualified immunity. In the context of the 14th Amendment, we would submit that there is simply no case that deals with the use of civilians in the context of responding to a 911 call, much less the contours of that case law. And so we would submit that because this court is silent on those specific factual issues, not only is this court silent, but the entire federal system is silent on the use of civilians within the context of 911 call, that this necessarily dictates that the contours could not be clearly established for purposes of the 14th Amendment due process. So why does it have to be so specific as in the context of a 911 call? I mean, we do have a pretty clearly established precedent on the State-created danger doctrine, and isn't that what happens here? Your Honor, I believe that it's not sufficient for, for example, to rely on the general principle of State-created danger, particularly because if you look at the specifics of those cases, for example, Kennedy was really a matter of a promise to protect the individual. And so the manner in which the danger was created was completely different. If you look at, for example, Wood v. Ostrander, that case was also completely different in terms of an abandonment issue. So the danger in creation was abandoning this woman in a high-crime area. Those facts are simply not present here. But didn't this officer, by his request to the guns, place them in significant danger? Even given the full story. As alleged, Your Honor, the fact is, is those are omissions. And whether the creation of the danger is based on omissions as opposed to simply asking them to check on a neighbor, what case provides the contours for the ---- Well, as Judge Wardlaw said, where is there a requirement that the case has to be on all fours? We would submit there's not even on one link. Why would a reasonable officer think that this was a lawful thing to do? Under the ---- When the call is, you know, the call is, I need help, it's in a hushed voice. At least that's the way it's represented. Help. Help. And the other allegation, Your Honor ---- And then it's not related. That representation is not related to the guns. When they call, when your officer calls the guns and says, hey, go check on your neighbor up on Kemphorn. Under the allegations of the complaint, Your Honor, the guns also claim that the officer said that perhaps it was weather-related. So the allegations don't state that this officer somehow knew that there was some danger involved. And ---- But why would an officer ask a neighbor to go over and investigate anyway? Why? I mean, tell me about that. I mean, is it common practice in the ---- for police to call a neighbor and say, hey, go check on your neighbor? Well, it's not in the allegation. But, Your Honor, just for by way of background, this particular officer was several hours away. And there was no one else around. And so he was attempting to gather additional information. Now, we disagree with the underlying allegations. But for purposes of a review with 12b-6, they have to be considered as true. And so that the officer says, check on the neighbor, isn't necessarily, under the circumstances, a third party somehow putting them at danger simply because there's no allegations he knew that there was a drug deal going on or that there's a third party present. Well, maybe the guns might not have acted as they did. He represented the full ---- as he relayed the full message to the guns. They may not have gone over there. The husband may have walked up to the door. You know, it wasn't the full story. And we would submit that since that is an omission, there's really no case law that says the officer has to say everything to invoking some means of having a civilian check on a neighbor to say, oh, by the way, here's all the information. You decide whether you want to do it or not. There's nothing that provides that contours to that officer. So really, that's the extent of it. Is it ---- I'm just curious, is it common practice in your county for the police to ask civilians to do their job? Your Honor, while we disagree with the allegations, that is the allegations that we're dealing with. Okay. Which particular ones? In terms of the fact that the officer ---- it is claimed that the officer asked the plaintiffs to check on the neighbor. While we disagree with that, that is the allegation. And so taking that as true. Right. We have to take that as true. So what ---- just out of curiosity, have you filed an answer in this? So there's a concurring State matter, and the matter has stayed in the district court as well. But what's going on in the concurrent State matter? It was dismissed by way of summary judgment and is now currently on appeal as well in favor of defendants. And so ---- Well, that's a negligence claim? Yes. That's a special relationship. Yeah. Negligence. Yes. And so, no, it is not as a practice, Your Honor. No, it is not. But that is regarding the Monell issue, which we're not here today on. It's simply a matter of the more difficult, I think, question comes from where the the Constitution. And we would submit that even in the cases in which this Court or other circuits have looked at the contours of what makes it obvious, there is something there in terms of factually that does place it on some leg, a substanding. We would submit that there is simply no case that gives those contours. And I would reserve the remainder of my time for rebuttal. All right. Let me do so. Thank you. Good morning, Your Honors. May it please the Court. My name is Benjamin Mainzer. I'm counsel for James and Norma Gund, plaintiffs in Appelese in this matter. As Mr. Whitefleet indicated, the question before this Court is whether, in a nutshell, pre-existing law provided fair warning to Corporal Whitman that his conduct in asking the guns to respond to a 911 call, where the caller was whispering for help, where the caller was subsequently unreachable, and where Corporal Whitman was informed by the CHP dispatcher who took the call that the dispatcher was of the opinion that the caller was trying to avoid being heard, whether sending civilians to respond to that call under those facts was a denial of their Fourteenth Amendment rights, a substantive due process. Appellants in this matter have in essence argued that because there is no case before the Court that deals with the exact factual predicate, in this case utilizing civilians to respond to a dangerous 911 call, that this Court should grant or, excuse me, that that, with respect, is not the standard that this Court has indicated applies in qualified immunity cases. The question is, in essence, whether there would have been fair warning, not whether an exact factual predicate exists. So which cases would have given this officer fair warning that by doing what he did here, he would have known that his actions violated the Constitution? Your Honor, I think first and foremost the Wood case from the circuit Wood, and that being from the Wood case, officer, excuse me, Corporal Whitman should have known that inserting a civilian into a situation, a high-crime area, so to speak, without with conscious disregard, excuse me, with deliberate indifference for that citizen's well-being should have warned him that doing, in essence, the same. I would submit that there is no constitutionally significant difference between sending someone to a high-crime area and leaving an individual in a high-crime area. So first, from Wood, that's discernible. Second, the Grubbs case also, I think, provides fair warning to Corporal Whitman that his conduct was impermissible. In that case, as a corporal – excuse me, in that case, the issue there was whether or not the employee of the State prison, the nurse there, was properly advised of the dangers that she faced being exposed to an inmate with a violent past. One of the issues in that case was whether that person was properly, LW, was properly informed of the dangers. One of the allegations in the instant case is that the guns were not, that they were, in essence, given misrepresentations about the nature of the call. They were told it was weather-related and likely no big deal, to paraphrase what Corporal Whitman stated. So for those reasons, what case law from both Woods and Grubbs and established also in Kennedy, this Court has indicated that an officer has the body of law to inform him or her that inserting an individual through affirmative conduct into a situation more dangerous than they left her or him is a violation of that citizen's substantive  Additionally, Your Honor – So let me ask you, would it be – would it always be improper for an officer to ask a civilian to, you know, hey, go next door and check on your neighbor and we got, you know – I think something might be amiss. Just go check and call me back. What's wrong with that? I think it depends on the facts known to the officer. And here it's alleged specifically that the officer is aware of facts that would, to an ordinary or reasonable officer, apprise that officer of a concern for that citizen's well-being. But the thing we don't know is what Morrison actually said to Corporal Ron Whitman. I mean, did she tell him about the phone call and about the fact that she had tried to call back and know that she couldn't reach the caller? And then the second question is, if she did, can an omission be deliberate indifference, like that he knew these facts and didn't tell them? Is that equal deliberate indifference? To answer, Judge Wardlaw, your first question, yes. Dispatcher Morrison did, in fact, inform Corporal Whitman of the concerns the CHP dispatcher had, those calls, as alleged in our moving papers and the pleading underlying this action, he was specifically told about the fact that the caller had been whispering for help, that she had, she meaning the CHP dispatcher, had been able to reach her on subsequent attempts, and the CHP's dispatcher opinion that the 911 caller was trying to avoid being heard. That was the suspicion. It's interesting that she didn't omit those facts, as alleged to the officer Whitman, but Corporal Whitman omitted the facts. And I think that's very telling, Your Honor. I agree. The question, I think, to paraphrase what Judge Paez was indicating, and to the second point, the omission of not giving the guns the sufficient facts to evaluate whether or not they chose to, in essence, answer Corporal Whitman's directive to go and check on their neighbor is significant. Yes, I think that in the same way that the omission in Kennedy of failing to provide protection as promised and the omission in Kennedy of failing to inform the Kennedys of the fact that Officer Shields, in that matter, had, in fact, contacted their neighbor, the Kennedys had complained, the court in Kennedy and in Grubbs both found that that conduct significant, both to find deliberate indifference in that officer's part and deny qualified immunity. But I think as well, Your Honor, it's important to not lose the proverbial forest to the trees. This conduct, plaintiffs do indeed allege, is so outrageous, is so obvious a danger that without the body of law from, excuse me, from Woods to Grubbs to Munger to Kennedy, that this should have been extremely apparent to Corporal Whitman that what he was doing was exactly what the court in all of those cases has previously indicated is improper. And that is the fact, as clearly explained in Kennedy, that it is beyond dispute that since September 1998 that State officials could be held liable were they affirmatively and with deliberate indifference placed an individual in danger she would not otherwise have faced. There is no clearer example of placing an individual in danger that they would not otherwise have faced to send an individual to a crime scene. One issue that Mr. Whitefleet raised in his comments to the Court just now was the question of what was foreseeable, what would the officer have been required to know, and what does the Court require the officer to know under when evaluating the question of qualified immunity. In each of these cases, starting with Wood, it was not required by this Court or any other court for the officer to have omniscience about the harm that was being faced. It was not a foregone conclusion that Woods would be raped when she was left in a high crime area, nor was it a foregone conclusion that L.W. would be raped by the inmate. It was simply a scenario where the officer's conduct placed those individuals in a situation where they were faced with enhanced danger, a high crime area, so to speak. That is exactly what has happened here. We're sending the guns to respond to a 911 call under the facts as alleged here. That is, in essence, sending the guns to that high crime area in Woods, to the intimate involvement of a violent inmate in Grubbs. And for those reasons, Whitman, just as the CHP dispatcher and Morrison believed that those facts were important to reveal, so too should have Corporal Whitman to the guns. Did the police ever, I mean, what, so apparently the, Tom Governor, who had killed his wife, attacked both the guns. That's in the complaint, but it doesn't say what happened afterwards. Did the police ever come? I mean, what? They did. What happened, James Norma Gunn had their, went into the house. They had their throats slit. They found Christine, who was the neighbor who had called 911, her boyfriend murdered. They managed to escape, fight off Governor. And run away, actually, and to a neighbor's store and get help. Police, as expected, then responded. There was a high-speed car chase and Thomas Governor died in a vehicle impacting a tree as he was fleeing from CHP. I think, Your Honor, that the facts of this case make it such that there should have been fair warning. There was fair warning such that Corporal Whitman should have known that his conduct was improper. Though it's not an issue that was raised in the pleading, Your Honor indicated some questions about what is ordinary practice in Trinity County. I think it bears noting, for example, that this is not the first instance where this has happened. There have been prior instances, as alleged in the discovery that's in the court case before it was stayed. But on that, Your Honor, I would submit. All right. Thank you, counsel. Counsel? The distinction here is plaintiffs are saying that there should be some basis for this Court to say, well, merely checking on the neighbor is enough, and to establish  that that should be obvious. You don't ask a civilian to check on the neighbor. Instead, what they're saying is, you don't ask the civilian to check on the neighbor and omit information. And the reason that that's the obvious, I think the obvious thing is that if the guns knew that a potentially dangerous situation existed, which it sounds like it did from the facts that were omitted, they wouldn't have gone over there. They would have said, no, you check on it. And that's a supposition that we would submit that is not clearly established in terms of the contours. Well, at least they ought to have the choice whether to go into a dangerous situation or not. And does the choice invoke substantive liberty due process or not? Or is it? Well, you know, they're placing them they're in their safe home, right? They're at home when they get this call. Correct. They're in their home. They're in a place of safety, right? Well, presumably. Well, they're in their home. I mean, you know, let's be honest about it. They're in their home and they get this call. Go check on the neighbor. It might not be important. It might be a minor, it might be, phone might be down because of the weather. You know, and if you're a good neighbor, you know, you might go just, hey. And the question, Your Honor, is ultimately is. That's not what happened here. The contours of you pick, do we cherry pick the facts and say, well, okay, if he had not omitted this fact. I'm sorry, but there's no cherry picking of the facts. My position is that by saying that one fact, if you add this fact, would that have changed things, would that have invoked substantive process? Our point is it does not. We're not cherry picking because if you take the allegations as true, he omitted facts that would tell a reasonable person your bodily security could be endangered if you go over there. Possibly, possibly not. Merely having a whispered and a call hang up when the allegations are that it could be weather related doesn't necessarily invoke a dangerous situation. Otherwise, we're engaging in 20-20 hindsight. We would submit that because plaintiffs are looking at Woods or relying on Woods, the fact that the Eleventh Circuit in Corson v. McMillan that we cited in our opening brief, page 9 of footnote 1, out of the Eleventh Circuit essentially disagreed with Wood, saying that the abandonment issue is not necessarily a constitutional violation. We may disagree with the judgment of the officer. We may not like that. We may be disappointed, is what the Eleventh Circuit said, but that doesn't necessarily mean that the contours of the constitutional violation were established. And with that, we would submit. All right. Thank you, counsel. Gunt v. Trinity County is submitted. We'll take up Burgess v. Reynolds.
judges: Noonan, Wardlaw, Paez